IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| LINDA B. TURNEY, | § | |
| PLAINTIFF | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:08-CV-189-Y |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| DEFENDANT. | § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND
### NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

A. STATEMENT OF THE CASE

Plaintiff Linda B. Turney filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits under Title II and supplemental security income (SSI) under Title XVI of the Social Security Act. She applied for SSI benefits and disability insurance benefits on April 7, 2005, alleging disability commencing October 16, 2002. (Tr. 59, 440). Turney was insured for purposes of disability insurance benefits through June 30, 2006. (Tr. 57).

The Social Security Administration denied Turney's applications for benefits both initially and on reconsideration. She requested a hearing before an administrative law judge (ALJ), and ALJ William H. Helsper held a hearing on November 14, 2006. (Tr. 444). On March 23, 2007, the ALJ issued a decision that Turney was not entitled to disability insurance or SSI benefits because she was capable of performing a modified range of sedentary work.[1] (Tr. 17-24). The Appeals Council denied Turney's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 3).

B.    STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c). *See Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. 20 C.F.R. §§

---

[1] Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. 20 C.F.R. §§ 404.1567(a), 416.967(a).

404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198.

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id*. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *Hollis*, 837 F.2d at 1383.

C. ISSUES

    1. Whether the ALJ properly evaluated Turney's residual functional capacity; and

2. Whether substantial evidence supports the ALJ's decision that Turney was capable of performing other work existing in significant numbers.

D. ADMINISTRATIVE RECORD

1. Medical History

Turney was born January 18, 1947. (Tr. 59). She has an associate degree, and she has worked as a cargo handler, a stocker, and a customer service representative. (Tr. 65, 69, 447). Turney's relevant medical history includes surgery in 1963 to remove a tumor from her right arm, which resulted in some permanent contraction in her right hand. (Tr. 251-52).

Turney injured her right shoulder while working in October 2002, and magnetic resonance imaging (MRI) showed a complete rotator cuff tear. (Tr. 145, 221). She underwent arthroscopic surgery in December 2002 to repair this initial rotator cuff tear, but recurrent tears required additional arthroscopic surgery in April 2003 and March 2004. (Tr. 150, 186, 221). In August 2004, Turney's surgeon, Craig Saunders, M.D., opined that Turney should be allowed to medically retire. He also instructed her to avoid overhead lifting or lifting more than five pounds with her right arm. (Tr. 249).

On August 24, 2005, Turney underwent a total right shoulder replacement. (Tr. 332, 367, 378). Following surgery, she continued to have pain, weakness, and reduced range of motion in her right shoulder and arm. Saunders anticipated that it would take Turney a year to recover from surgery. Saunders further opined in December 2005 that Turney was a candidate for medical retirement and would be unable to return to gainful employment due to restrictions in the use of her right arm. (Tr. 367). Saunders limited Turney to lifting less than five pounds with her right arm and no overhead use of that arm. (Tr. 414). In April 2006, Turney sought treatment with pain specialist

Tommy Spain, M.D. She reported intermittent shoulder pain, which was worse in the evening. Physical therapy only made her symptoms worse. (Tr. 417). Spain prescribed Celebrex and Hydrocodone. (Tr. 421).

    2.    Administrative Hearing

Turney testified that she is right-hand dominant. She stopped working in October 2002 because she injured her right shoulder. She testified that none of her surgeries had helped and she still experienced tremendous pain in her shoulder. (Tr. 447-48). Turney testified that she could not drive, reach overhead, or dress herself without assistance. (Tr. 449). She testified that she was unable to perform her previous work as a service representative because of her clawed right hand. (Tr. 450). She was no longer under a physician's care for her shoulder or hand because the surgeon had told her that he had done all that he could for her condition. (Tr. 451).

Turney testified that she spent most of the day watching television, walking outside, or lying down. Turney testified that her pain fluctuated from a low of five to a high of eight or ten (on a ten-point pain scale). (Tr. 453). She took Vicodin every six hours for pain, which made her dizzy. Three or four days a week, the pain was so severe that she felt nauseated. When that occurred, she took additional pain medication. (Tr. 454-55).

Vocational expert Todd Harden testified that work as a cargo handler was semi-skilled and required heavy exertion; work as a stocker was unskilled and required medium exertion; and work as a customer service representative was skilled and sedentary in exertion. (Tr. 456). Harden testified that a person who was unable to use her dominant upper extremity would be unable to perform any of Turney's previous work, but would have acquired work skills that would transfer with little adjustment to the jobs of motel clerk (50,000 jobs nationwide and 4,000 in Texas),

collection clerk (40,000 jobs nationwide and 3,300 in Texas), or information clerk (40,000 jobs nationwide and 3,200 in Texas). (Tr. 456-57). Harden clarified that he was testifying about a person's ability to perform a particular job, not a person's actual employment prospects. (Tr. 462-63).

  3. ALJ Decision

The ALJ followed the five-step sequential evaluation process. He found that Turney had not engaged in substantial gainful activity since October 16, 2002, and also found that her right shoulder disorder constituted a severe impairment. (Tr. 19). The ALJ, however, found that Turney's impairment did not meet or medically any listed impairment. Instead, based on consideration of the entire record, the ALJ found Turney was capable of sedentary work, which required the ability to lift a maximum of ten pounds, walk and stand for two hours during a standard workday, and sit for six hours during a standard workday, with a further restriction of limited overhead use of her dominant right upper extremity. (Tr. 20). Based on the vocational expert's testimony, the ALJ found that Turney was unable to perform any of her past relevant work, but had acquired work skills that would transfer to other work existing in significant numbers in the national economy. (Tr. 22-23). The ALJ concluded that Turney had not been under a disability for purposes of disability insurance or SSI benefits at any time through the date of his decision. (Tr. 23-24).

E. DISCUSSION

  1. Residual Functional Capacity

Turney complains that the ALJ's assessment of her residual functional capacity (RFC) for sedentary work is unsupported by substantial evidence. She asserts that the ALJ's determination is inconsistent with her treating physician's opinion, the opinions offered by the state agency

medical consultants, and her subjective complaints about her limitations.

Treating specialist Saunders repeatedly opined that Turney was disabled and should be allowed to medically retire, and it was his opinion that Turney could not be gainfully employed because of restrictions in the use of her right arm. Turney asserts that the ALJ failed to evaluate Saunders' opinions in a manner consistent with the regulations.

Opinions, diagnoses, and medical evidence from a treating physician who is familiar with the claimant's impairments, treatments, and responses should be given great weight in determining disability. *See Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). The ALJ assigns controlling weight to the opinions of a treating physician if well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). Before rejecting a treating source opinion, the ALJ must address several relevant factors, including the length of the treatment relationship, frequency of examination, nature and extent of the treating relationship, evidence supporting the opinions, the consistency of those opinions, and medical specialization. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000). *See also* SOCIAL SECURITY RULING 96-2p, 96-5p. However, the determination of disability always remains the province of the ALJ, and the ALJ can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett*, 67 F.3d at 564; *Greenspan*, 38 F.3d at 237. *See also* 20 C.F.R. §§ 404.1527(e), 416.927(e).

The ALJ considered Saunders' treatment records, his opinion that Turney should avoid

overhead lifting or lifting more than five pounds with her right arm, and his expectation that Turney's condition would improve within twelve months. The ALJ further noted the lack of significant clinical and laboratory abnormalities that would be expected if a claimant's impairments were disabling. (Tr. 21). Although Saunders recommended medical retirement, the ALJ observed that the issue of disability is reserved to the Commissioner. (Tr. 22). Opinions about a claimant's ability to work are not medical opinions entitled to special significance because they address the ultimate issue of a claimant's disability. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). As for Saunders' opinion that Turney had limited motion in her right shoulder, the ALJ did not reject that assessment, but incorporated an overhead-lifting restriction in Turney's RFC. The ALJ gave adequate consideration to Saunders' opinions.

Turney also asserts that the ALJ failed to consider the functional limitations described by the state agency medical consultants who reviewed her case initially and on remand. Findings of fact made by state agency medical and psychological consultants regarding the nature and severity of an individual's impairments are treated as expert opinion evidence from non-examining sources at the administrative hearing and Appeals Council levels of review. 20 C.F.R. §§ 404.1527(f), 416.927(f); SOCIAL SECURITY RULING 96-6p. The ALJ is not bound by the state agency physicians' opinions, but may not ignore them and must explain the weight given to these opinions in their decisions. SOCIAL SECURITY RULING 96-6p. In addition, an agency must follow its own procedures, even if the procedures are more rigorous than what would otherwise be required. *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. [Unit A] 1981)(per curiam), *cited in Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000). If the agency violates its rules and prejudice results, the proceedings are tainted and any action taken cannot stand. *Hall*, 660 F.2d at 119.

State agency physician Frederick Cremona assessed Turney's RFC in May 2005. (Tr. 358-65). He found Turney was capable of lifting up to twenty pounds occasionally, lifting ten pounds frequently, sitting for about six hours per day, and standing or walking for about six hours per day. (Tr. 359). He also found that she could perform overhead reaching with her right arm on an occasional basis and handling, fingering or feeling with her right hand on a frequent basis.[2] (Tr. 361). Cremona imposed no limitations with respect to Turney's ability to use of her left arm or hand. He affirmed that he had taken Turney's pain complaints into consideration, and he opined that her allegations were supported by the record but not disabling. (Tr. 365).

On reconsideration in September 2005, state agency physician James Wright noted that Turney had undergone recent reconstructive surgery on her right shoulder. (Tr. 52). He limited her to light work, consisting of lifting up to twenty pounds, standing or walking up to six hours per day, and sitting for up to six hours per day. (Tr. 351). He also restricted Turney to only occasional overhead lifting with her right arm, but otherwise imposed no manipulative limitations. (Tr. 353).

The ALJ stated that he had considered all of the medical opinion evidence in accordance with the regulations and rulings, but he did not expressly address the weight he assigned to the opinions offered by the state agency medical consultants. *See generally* SOCIAL SECURITY RULING 96-6p. This was error, but Turney has not demonstrated that the error affected the Commissioner's decision.

The state agency physicians who reviewed Turney's case found her capable of light work

---

[2] Reaching, handling, fingering, and feeling require progressively finer usage of the upper extremities. SOCIAL SECURITY RULING 85-15. Handling involves seizing, holding, grasping, turning, or otherwise working primarily with the whole hand or hands, and is an activity required in almost all jobs. *Id*. Fingering involves picking, pinching and working primarily with the fingers, which is necessary in the performance of most unskilled and sedentary jobs, while feeling the size, shape, temperature or texture of an object is required in few jobs. *Id*.

activity, while the ALJ restricted her to the lesser exertion of sedentary work. The state agency physicians found that Turney could use her right arm for occasional overhead reaching, and the ALJ likewise found Turney had limited overhead use of her dominant right arm. Although Turney asserts that the ALJ should have considered the vocational impact of restrictions in handling, fingering, and feeling, the vocational expert identified work that was suitable for a person who had lost the use of their dominant upper extremity, (Tr. 456), and Turney does not argue that any of the jobs identified by the vocational expert would require handling, fingering or feeling on more than the frequent basis found by the state agency physician. The ALJ should have addressed the findings of the state agency medical consultants, but his failure to do so was harmless.

Turney also complains that the ALJ did not properly assess her credibility. In evaluating a claimant's subjective complaints, the ALJ first considers whether there is a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); SOCIAL SECURITY RULING 96-7p. Once the impairment is found, the ALJ evaluates the intensity, persistence and limiting effects of the symptoms on the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1529, 416.929. A claimant's testimony must be consistent with the objective medical evidence and other available evidence. 20 C.F.R. §§ 404.1529, 416.929. In all cases in which pain or other symptoms are alleged, the administrative decision must contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's own observations. SOCIAL SECURITY RULING 95-5p. A claimant's statements about pain and other symptoms are not conclusive evidence of disability, but must be accompanied by medical signs and findings of a medical impairment that could reasonably be expected to produce the pain or other symptoms

alleged and that would lead to the conclusion that an individual is disabled. 42 U.S.C. §423(d)(5)(A). Turney complained of tremendous pain in her shoulder. She also testified that she cannot fully extend her right arm and that she had essentially no use of her right hand because her fingers are clawed. The ALJ found that the record demonstrated the existence of a medically determinable impairment that could reasonably be expected to produce Turney's alleged symptoms, but also found that Turney's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (Tr. 21). Although Turney had a claw-like hand due to a remote surgery, the ALJ noted that Turney had a long and productive career since that time. (Tr. 22). He reviewed the lack of significant clinical and laboratory abnormalities, the effectiveness of pain medication, and the fact that Turney continued to work on light duty for several months after her initial injury. (Tr. 21-22, 65). He also observed that Turney showed no evidence of pain or discomfort at the hearing, which he acknowledged was not a conclusive indicator of her overall pain level, but was a factor to be considered. (Tr. 22).

Turney complains that she has consistently reported at least moderate levels of pain; however, not all pain is disabling. Whether pain is disabling is an issue for the ALJ, who has the primary responsibility for resolving conflicts in the evidence. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001)(citing *Carrier v. Sullivan,* 944 F.2d 243, 247 (5th Cir.1991)). It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference. *See Wren v. Sullivan,* 925 F.2d 123, 128 (5th Cir.1991); *James v. Bowen,* 793 F.2d 702, 706 (5th Cir.1986). *See also Jones v. Heckler,* 702 F.2d 616, 622 (5th Cir.1983). The ALJ gave sufficient attention to Turney's crediblity and adequately explained the weight he assigned to her subjective complaints.

Turney also argues that the ALJ did not properly assess her RFC. The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to perform work-related activities. SOCIAL SECURITY RULING 96-8p. It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).

Turney complains that the ALJ did not make the necessary function-by-function assessment before finding her capable of a modified range of sedentary work. To the contrary, the ALJ expressly found that Turney retained the RFC for sedentary work, which he broke down into its component parts: the ability to lift a maximum of ten pounds, to walk and stand for two hours out of an eight-hour workday, and to sit for six hours in an eight-hour workday. (Tr. 20). He further restricted Turney's RFC to reflect limited overhead use of her dominant upper extremity. The ALJ's decision reflects that he performed the necessary function-by-function assessment of Turney's abilities, and that assessment is supported by substantial evidence.

2. Vocational Evidence

Turney contends that the Commissioner has failed to show that she can perform other work existing in significant numbers. More specifically, she contends that the ALJ relied on vocational expert testimony that conflicts with the Dictionary of Occupational Titles (DOT). The ALJ has a duty to inquire into possible conflicts between vocational expert evidence and the DOT. SOCIAL SECURITY RULING 00-4p.

The vocational expert testified that a person of Turney's age, education, and work experience who could not use her dominant upper extremity would be capable of performing the jobs of motel clerk, collection clerk, and information clerk. The DOT, however, describes the jobs of motel clerk

and collection clerk as requiring light exertion. DICTIONARY OF OCCUPATIONAL TITLES §§ 238.367-038, 241.367-010 (rev. 4th ed. 1991). The ALJ asserted in his decision that there were no conflicts in the vocational evidence, but he did not ask the vocational expert about the existence of any conflicts and did not address the DOT"s description of the exertional requirements for the jobs identified. A review of the administrative hearing transcript also reflects that the ALJ did not ask the vocational expert to limit his testimony to sedentary work. The ALJ's failure to inquire into and resolve conflicts between the vocational expert's testimony and the DOT was error; however, Turney cannot demonstrate prejudice because the vocational expert identified a third job, as an information clerk, which does not present a conflict in the vocational evidence. *See id*. § 237.367-022.

Turney concedes that the job of information clerk is considered sedentary work, but complains that the ALJ's ability to identify only one suitable job warrants a finding of disability based on a significantly eroded occupational base. She also notes that the vocational expert testified that employers preferred to hire workers who have bilateral use of their hands. (Tr. 462).

The Commissioner has the burden at Step Five of the sequential evaluation process to prove that other work the claimant is able to do exists in significant numbers in the national economy, either in the region where the claimant lives or in several other regions of the country. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1566(a), 416.966(a). It is not necessary that the work exist in the immediate area where the claimant lives, that a specific job vacancy exists, or that the claimant would be hired if she applied for the job; however, isolated jobs existing in only very limited numbers in relatively few locations outside of the region where the claimant lives are not sufficient. 20 C.F.R. §§ 404.1566, 416.966. When vocational resources are used and an individual is found

not disabled, the decision must include examples of occupations/jobs the person can do functionally and vocationally along with a statement of the incidence of such work in the region in which the individual resides or in several regions of the country. SOCIAL SECURITY RULINGS 83-12, 83-14. The ALJ's decision contains all of this information, which was provided by the vocational expert.

Turney cites Social Security Ruling 83-12 to support her argument that a person with a RFC that falls between two exertional levels, and the lower level would direct a finding of disability, may be deemed disabled if the person's RFC is significantly reduced when compared to the regulatory definition of the higher exertional level. *See* SOCIAL SECURITY RULING 83-12. The ALJ did not find that Turney's exertional capacity fell between two exertional levels. Moreover, Social Security Ruling 83-12 recognizes the value of vocational expert testimony when a claimant has lost the use of an upper extremity and does not mandate that a claimant with such an impairment be found disabled. *See id.*

The vocational expert considered a worker of Turney's age, education, and transferable skills who was unable to use her dominant upper extremity, and testified that there were approximately 40,000 information clerk jobs nationwide and 3,200 jobs in Texas that would be suitable for someone with this vocational profile. The vocational expert's testimony constitutes substantial evidence that Turney is capable of performing other work existing in significant numbers, even if the jobs are within a single occupation, which satisfies the Commissioner's burden at Step Five of the sequential evaluation process.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until December 16, 2008. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until December 16, 2008, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of

the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED NOVEMBER 25, 2008.

    /s/    Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE